ED JACKAMONIS, Chairman Assembly Committee on Organization
Pursuant to a motion made and adopted by the Assembly Committee on Organization, I have been asked to comment on the following issue:
 "The Assembly Chief Clerk has been requested to disclose the identity and numbers of telephone credit cards issued to Legislators. Further, the Chief Clerk has been requested to allow inspection of records of long-distance calls by telephone users, which are furnished to the Chief Clerk as part of the billing process for telephone services. These records disclose, among other things, the telephone number and location of persons called; thus, disclosure may invade the privacy of those persons called.
 "The Committee desires an Opinion (a) discussing the rights of all parties involved in or affected by the disclosure of the requested information; and (b) limitations on, and legality of, disclosure of these records.
Section 19.21, Stats., concerning the custody and delivery of official property and records, provides in part:
 "(1) Each and every officer of the state . . . is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers. *Page 203 
 "(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1). Any person may, at his own expense and under such reasonable regulations as the custodian prescribes, copy or duplicate any materials, including but not limited to blueprints, slides, photographs and drawings . . . ."
Although none of the cases or opinions of the Attorney General interpreting this section of the statutes have concerned the duties of legislative, as opposed to executive or judicial, officials, at common law public records were considered to include legislative and judicial as well as executive records. 66 Am. Jur. 2d. Records and Recording Laws sec. 2. The Assembly Chief Clerk is an officer of the Legislature. Wisconsin Constitution art. XIII, sec. 6, provides:
 "The elective officers of the legislature, other than the presiding officers, shall be a chief clerk and a sergeant at arms, to be elected by each house."
The duties of the chief clerks of the Legislature are set forth in secs. 13.15 to 13.17, Stats. The keeping of the telephone records is not specifically included within those duties; however sec. 13.15(1), Stats., provides in part that the chief clerk "shall perform all such duties as by custom appertain to his office and all duties imposed by law or by the rules." I understand from your letter that, whether by custom or by rule, the duty of maintaining the telephone records of legislators appertains to the office of chief clerk. That being the case, those records are "in [his] lawful possession or control." Sec.19.21 (1), Stats.
Since the Assembly Chief Clerk is an "officer" of the Legislature, in my opinion he is also an "officer of the state within the meaning of sec. 19.21, Stats., and consequently records lawfully within his control may be examined by the public in the manner provided in sec. 19.21(2), Stats.
The right of the public to examine and copy records maintained by an officer of the state is not absolute, however. See Stateex rel. Youmans v. Owens, 28 Wis.2d 672, 137 N.W 2d 470 (1965);Beckon v. Emery, 36 Wis.2d 510, 153 N.W.2d 501 (1967); and 63 Op. Att'y Gen. 400 (1974), which contains a detailed discussion of the public *Page 204 
right to full access to all public records and the qualifications on that right. There are only three such qualifications. Two of them, i.e., reasonable regulations as to hours, procedure, etc., and express statutory limitations, do not concern us here. The third is stated as follows in 63 Op. Att'y Gen. 400 at page 406:
 "The custodian may and has a duty to deny inspection where he determines that permitting inspection would result in harm to the public interest which outweighs any benefit that would result from granting inspection . . ."
For example, and with no attempt to be exhaustive, it may in some circumstances be justifiable to withhold information obtained under a pledge of confidentiality, minutes of a grand jury investigation, or evidence relevant to a criminal prosecution.
On the other hand, as far as I am aware, an assertion of a right to privacy on the part of persons with whom the officeholder deals or to whom the records refer has never been successfully asserted as a reason to justify denial of access to those records, except in a case where some other basis for denial also exists, such as the danger of "undue" damage to a person's reputation. Correspondence directed to an officer of the state in his official capacity is subject to no general privilege against disclosure, even though the identity of the correspondents will of necessity be revealed when the correspondence is made public. See 63 Op. Att'y Gen. 400, supra. In my opinion, records of calls by telephone users are of a similar nature, and no general privilege against disclosure attaches to them.
Furthermore, public policy favors the right of inspection. As stated in Beckon v. Emery, supra, at page 516:
 ". . . It is only in the unusual or exceptional case, where the harm to the public interest that would be done by divulging matters of record would be more damaging than the harm that is done to public policy by maintaining secrecy, that the inspection should be denied . . . ."
Since, as stated above, there may exist special circumstances which will justify maintaining the secrecy of records that otherwise would be available to the public, I cannot state categorically that all of the telephone records within the control of the Assembly Chief Clerk must be made available to the public. It is the duty of the custodian of records to determine in the first instance whether *Page 205 
circumstances exist which justify nondisclosure in a particular case, that is, weigh whether the harm done to the public interest by disclosure outweighs the right of a member of the public to have access to particular public records or documents. State exrel. Youmans, supra, at page 681.
BCL:WHW